The threshold determination is whether the evidence tends to prove a material point that's at issue of trial beyond character and propensity. I have a going in question. What exactly was introduced here? Was the plea agreement introduced? No, Your Honor, it was live witness testimony. Was the conviction introduced? No, Your Honor. The only thing that was introduced was the material that's on pages 198 to 200. Is that it? Well, Your Honor, it came up again during the trial. It came up at six different times during the trial. But that was the method with which the government did introduce the evidence initially. And what else? What else did it come up? It came up on EOR 310, 316, 328 during closing and rebuttal. It also came up EOR 278 to 279 during a cross-examination of Ursula Christmas. What's interesting, Your Honor, is that if you look at 199 to 200, the officer testifies to finding a rifle in the closet that Mr. Hankins was charged and convicted of. But the prosecutor turns that rifle into an assault rifle. And during the cross-examination, she uses the word assault rifle twice on 278 to 79. During a rebuttal argument 328, once again, it becomes an assault rifle. Once again, though, the question here is did the government precisely articulate a focused determination of relevance? And that's a key threshold requirement for the introduction of Extrinsic Act evidence. And it's crucial because what the district court ---- The reason I ask the question is because the material, the main material where the evidence was introduced, really doesn't say anything about it being Mr. Hankins' gun at the time. It simply says there was a gun there and they found it. That's all it says. But, Your Honor, what happened was the officer who arrested Mr. Hankins testified. That's right. To the event that he chased Mr. Hankins into the apartment and there was a rifle found in the apartment. Right. And during the closing argument, the government made it clear that Mr. Hankins possessed his firearm in the same apartment two months before the event. I'm just trying to figure out how does any of that evidence go to whether that tells a jury that Mr. Hankins possessed that firearm as opposed to there was a firearm there? Well, Your Honor, that wasn't really an issue at all. I mean, the government made it clear to the jury. I would submit if you look at the EOR sites that I gave you, if it wasn't exactly clear at 199 to 200 when the officer testified, it became very clear when the government used it as cross-examination material against the defense witness at 278 to 79. It becomes very clear when they use it in their closing argument and in their rebuttal on 310, 316, and 328. So I would direct the court there. There's no question that the jury here knew that Mr. Hankins possessed and was convicted, possessed the firearm and was convicted of that at a previous occasion two months before. Well, I think focusing on what you've been asked, who said he was convicted? Who said that? That's an interesting question, Your Honor. It was an answer. Well, if you look at the record, what the officer testifies to is that he opened the closet and there was a firearm or rifle sitting on the ground leaning against the wall. So nobody said he was convicted? Court's indulgence for a moment. Let me just reexamine the record. You may be exactly right, Your Honor. She never told the jury that he was convicted. All the jury found out was that he did have this firearm in the apartment. There was a firearm in the apartment? Yes, there was. And that's what they found out, there was a firearm in the apartment? Right. Well, but the officer's testimony made it clear that he was chasing Mr. Hankins and that he found the firearm directly in the apartment after running into the apartment after him. So it was clear, the clear implication was that Mr. Hankins possessed this firearm in a previous occasion. Now wait, it's no more clear on that occasion than it is on this occasion, is it? Well, that's a good point, Your Honor. But you're saying that the trial court erred in admitting evidence of this prior transaction that you characterize as evidence of a prior conviction. Is it any more than evidence that he was in a house while there was a gun in the house? Well, to be 404B evidence, it does not need to be a conviction. It can be just a prior bad act. It certainly doesn't need to be a conviction. And this was evidence that's extrinsic to the facts of this case. The government did parade in front of the jury evidence of a prior possession. To tell you what my feeling about it or my thought about it, it is that although I tend to agree with you that if there was actually a conviction introduced that it would not really go to knowledge, I don't see this material seems totally extraneous, but I also don't see how it's harmful or prejudicial. It's very prejudicial, Your Honor. It would be if they had introduced evidence that he possessed the gun at that time or that he was convicted of it, but I don't see where they did. Your Honor, I have to go back. I made an error. On 278-79, the government crossed the element, not 278-79, but during the cross-examination of Ursula Christmas, which is located thereabout, the government talks about this letter that she wrote to a district court regarding the sentencing of Mr. Hankins on this firearm conviction. So I was wrong what I said previously. Yes, the jury did have evidence that he was convicted or indeed sentenced for this prior firearm conviction. They introduced as an exhibit the letter that Ursula Christmas wrote the judge at his sentencing for that prior incident involving the firearm. Does the letter refer to his having been convicted of that crime? The letter, they redacted the very beginning of it where it said you're being sentenced, but the clear gravamen of the letter is I'm writing this letter to the court so the court will give Mr. Hankins leniency and consider giving him house arrest or probation rather than a period of incarceration for this prior offense. And this was directly related temporally to the cross-examination of Ursula Christmas, where they go from the letter and they segue directly into, yeah, it wasn't this firearm previously found in your apartment, that was possessed by Mr. Hankins. So they're very closely intertwined there. Now, the government never did introduce a judgment of conviction, which this court has made the point of. I would submit, though, that the repeated references to this extrinsic act that occurred during this trial was very prejudicial. It would have been even more prejudicial if the government had introduced the judgment. But it's still toxic evidence, to be sure, and it certainly affected the jury's verdict. Let me share with you just a little bit of lack of focus here on my part. Now, you have the problem of trying to correct it if you can. Now, this man stipulated that he'd previously been convicted of a crime. Did he not? Yes, he did. And that was never an issue in this case as a matter of substantive proof of the crime that he's charged with? That's right. Now, are you telling me that this letter is necessarily referable to some other conviction, not the conviction that he stipulated to? Well, Your Honor, the stipulated conviction was from 96. The letter was written to the judge in 2001-2000, which is the same time that the rifle was found. All right. So it's an inference. Now, it's an inference the jury certainly could have drawn, which they most likely did draw in this case, and there's no doubt that this extrinsic act evidence did play a prominent role in this trial. And what also is clear, very clear from this record, is the government never articulated to the district court a permissible theory for introduction. They didn't do it at the district court. That's very clear. But what's very telling is if you look at their answering brief on page 16, after they'd had time to think about this, when they sit down to write this answering brief and they had their best chance to articulate a theory for introduction, here's what they come up with. A jury could reasonably infer that after being caught once in the apartment with a firearm in a downstairs hall closet that the second time was most likely a knowing possession of the firearm. Now, what is that beyond a thinly veiled propensity argument? Because the question is how. How could the jury have inferred that it was more likely he possessed it on the second time, other than the obvious, which is he's the kind of character who likes to possess firearms, he's done it before, and so he did it again. And if I may, I'd like to reserve my remaining time for rebuttal. Go ahead. Good morning. May it please the Court. My name is Justin Roberts. I'm an assistant United States attorney from the District of Nevada. The court below did not abuse its discretion when it allowed the government to present evidence regarding a virtually identical incident to the one presented in the indictment that occurred two and a half months prior to the event outlined in the indictment. This Court has addressed issues surrounding 404B countless times, but it bears repeating today that Rule 404B is a rule of inclusion, and evidence of a prior act is admissible unless it tends to prove only criminal propensity. And if you look at the appellant's brief, some of the complaints or the issues addressed, I would submit proves why this evidence is admissible under 404B. For instance, the appellant's brief at 12 says, quote, the conviction is quite similar to the offense tried. The appellant's brief at 23 says, quote, the extrinsic act conviction admitted is quite similar to the crime charged. Both matters involve the same. Are you arguing for a modus operandi kind of disability? No, Your Honor. It was knowledge, and that was what was addressed. Why is it knowledge? You keep saying that, but exactly what do you mean by that? Well, it's knowing possession or constructive possession was the element that the government had to prove. Then he had knowing possession. Well, because in two and a half months prior to the events outlined in the indictment, a gun that the defendant owns is found in a closet, the same closet where the gun outlined in the indictment is found. It's the same closet. It's the same apartment. It shows the same gun. If it was the same gun, then it would prove knowledge, but it's not the same gun. Well, it shows access and knowing possession in that premise. As part of the defendant's case was that he didn't live there, that he only came there and visited periodically. And yet two and a half months prior to this incident, you have him with a gun that he pleads to, that he owned, found in the same exact closet. You didn't introduce the guilty plea. We did not introduce the guilty plea. You introduced the conviction. It was brought up on cross-examination of the girlfriend, the mother of the defendant's daughter. That's evidence of a conviction? When you say to somebody on this Christmas, you know that June Hankins pled guilty to charges associated with assault rifle? That's not evidence. And she says, did you find out why? And then she does say he pleaded guilty to that because the guy had got loose, et cetera. She does proceed to provide an explanation as to it, but it was during the course of cross-examination, the letter that was written to the state court judge was brought out to show bias, because she, in the letter, the judge took great pains, excerpted Record 263 to take away any harm that the admission of this would cause. So they did redact the fact that this was a sentence. The language, as counsel discussed at the beginning of the letter, but the point at this point in the cross-examination was that she was sort of distancing herself from the defendant and saying that he comes over periodically and, no, we're not married, no, I've never claimed to be his fiancée. Yet in the letter itself, she stated those exact things, and the judge found that it would show bias. The jury could determine her credibility, what they were hearing at the trial. I have to acknowledge this. How is your argument any different from saying, for example, this guy killed somebody with a gun last week, so therefore he killed somebody with a gun this week? Well, the case is suggesting, and I know counsel has made a great deal of the fact that the government didn't articulate its theory. I'm asking you now to tell me what the theory is. It's different from propensity. Well, the theory is that it shows it's the exact same act. It's not the concern of bringing in an incident where someone smuggled drugs in a backpack and then later smuggled the drug in a car. It proves that somebody who does something once might do it twice, but how does it prove knowledge? It shows access and knowledge that a gun is in the same place where a gun was found before two and a half months before that. A gun, though. A different gun. Different with a rifle, correct? That's correct. This was a handgun. That's correct. But it's a handgun the defendant claimed ownership over by his plea. There's no question that he acknowledged that that was his gun two and a half months previous that was found in the same exact closet in the same exact apartment that the gun that the subject of the indictment is. It's much closer factually, and it's why it is so probative of his knowledge and access to that closet. It's unlike the cases that this Court has discussed. The access and the knowledge are two different things. The access argument is that shows that he could put something in that closet if he wanted to. Is that the argument? Access is part of his constructive, knowing constructive possession of a gun in the closet. Knowing that it's there, Your Honor. If he had access to it before, you know, he had access to it on the day, May 29th, that's outlined in the indictment. It's quite minimal. In other words, it's simply proof that he has an ability to put something in that closet. Well, it's important to proving the knowing possession element because he's claiming that he doesn't have access to that closet. He doesn't live there. He claimed that he couldn't have figured out how to put something in the closet. No, Your Honor. He claimed through the evidence that he chose to put on at trial that he visits there on a limited basis. He didn't have access there. He had to have permission to be there. If they have a house and they want to hide something, they can go put it in the closet. Why do you have to prove anything about that? And they've never been there before. They can just open up a closet and put something in it. Well, I respectfully disagree. You have to prove that this is a defendant who, when you're trying to show the jury that he owned this gun on this particular date, it's relevant to show that he has had access to this apartment, that specific closet, for months if not over a year, I believe is the evidence. He was in the apartment. I mean, at the time, we know he was in the apartment at the time. And, in fact, there's this evidence about him scurrying around. If he wanted to put something in a closet, he could have put something in a closet. And you don't have to prove that, especially when it's this big. Well, Your Honor, the evidence that also came out through his girlfriend was that she claimed that it was her gun and that she needed it for protection and she hadn't had a gun for some time. Right. And then this comes out on cross-examination in a little bit further detail that, in fact, there had been a gun in her apartment two and a half months prior to this incident, which is contrary to what she had testified to. So during the cross-examination, that's how the details of that. I gather the government didn't feel it could prove its case without admitting this evidence. Well, Your Honor, the evidence did suggest that there was a fingerprint found on the magazine of the gun that's the subject of the indictment. There was also a palm print that wasn't a direct match but appeared to be a close match. But because of the nature and the facts surrounding the case, the government did feel that it was necessary to put this in to show knowledge. It was the one element that the government was required to prove beyond a reasonable doubt. And I know counsel for Mr. Hankins cites the old chief case, which is not exactly at issue in this appeal, but in that case does discuss that not only is the government obliged to put forward the elements, but also to put forward the evidence that the jury comes to the court with an expectation of hearing a story of the case. You don't think the fingerprint on the – was the clip to the gun? It was on the magazine on the gun, and the evidence was that the magazine actually matched that hand. Was the magazine actually inside the gun? Yes. Yes, it was. Now, I take it that there were two witnesses that you rely on to prove all of this. One is the policeman who on the prior occasion chased him into the apartment building. Yes, sir. And then found a gun in the closet in that apartment. Is that as much as the policeman said? Yes. And acknowledged that the defendant was present when the gun was pulled out of the closet. It didn't even do that. Wait a minute. I looked at that carefully. It doesn't even say that. I believe the question, Your Honor, was asked of him, was Mr. Hankins present at the time? And if I could get the court's indulgence, I can. Did you identify anyone else in this apartment? Yes. And who was that? Jezrin Hankins. But it doesn't say he was there physically present when he found the gun. Well, I don't know. He was testifying to an eyewitness account. I don't know how he would otherwise identify someone else in that apartment. Mr. Hankins' name was not in that release. But he didn't necessarily see him find the gun, or he doesn't say that. I'm sorry, Your Honor? He doesn't say that he was there when he found the gun in that closet. The question was, did you, as you read it, did you identify anyone else there? In this apartment. And that would be, under the circumstance, the only way he would have been able to identify him is by an eyewitness account. Mr. Hankins' name was not on the lease, which was part of his defense theory, was that this wasn't his place, which was all the more reason why the incident two and a half months previous was probative of his knowledge and constructive possession of the firearm. In any event, that's the extent of what the policeman had to say. That's correct, Your Honor. And then, on cross-examination, in order to attack the credibility of this witness, whoever she is, either his companion of some sort or his girlfriend or whatever she identified herself of, you introduce a letter, right? That's correct. And from that letter, now you argue that he is convicted of that specific offense with reference to that specific closet. During the examination regarding the letter, what went to her bias was the statement she had made about him being the father of her children, which was contrary to what she had testified to. I'm talking about how does this jury get evidence that this man was convicted of possessing that weapon located in that closet? The only evidence they get is on cross-examination. And that's all this stuff about whether or not she claimed to be the possessor of the gun, the present gun, and other guns, I guess. And she never used the word conviction. She did not, Your Honor, no. That assault rifle to which he pled guilty was the one in the closet. It just doesn't hook up. I don't know whose favor this is exactly, but it doesn't hook up. Well, she explains in response that her boyfriend or the father of her child, Mr. Hankins, pled guilty for some other reason, and there's no evidence in the record that there was an Alford plea or anything of that nature, but it showed his presence, and it was similar enough under this Court's case law to qualify as permissible evidence under 404B. I would have hoped that if the government thought this was important, it would have proved it specifically. Now, you say it's important to your case. You say you need it and all of that. And what I see here is a flimsy effort to infer that this guy was convicted of possessing the specific gun that was in the specific closet from which the gun in issue today was taken. But it's all through the equivocal evidence of a policeman and the impeachment of a witness who may or may not be biased, and that's it, right? That's correct, Your Honor. Okay. Thank you, Counsel. Not to belabor the point, but if the Court looks to 279, the cross-examination, the prosecutor says, Ms. Christmas, you know that you, John Hankins, pled guilty to the charge associated with that assault rifle, didn't he? And she says, do you find out why? And then she talks about that's why you wrote the letter. So the jury did have evidence there. Did she ever answer the question? Well, she tries to say that he pled guilty in order to protect her. She deflects the question, right? Yes, she deflects the question, exactly. And on 328, the government says, you know, poor Mr. Hankins was caught. The precisely articulate issue here, and I'm gratified that the Court seems to have an interest in that, when the government fails to precisely articulate its evidentiary hypothesis for introduction, it has a significant effect on the trial. And I would say that in this case, because the Court's limiting instructions, because the district court had no guidance from the government how this evidence was relevant, the Court's limiting instructions, both the oral and written, just basically recite the litany of permissible theories of introductions. The Court's limiting instruction never channeled the jury's thought processes into why this prior conviction is relevant to prove a material admissible point. And therefore, it's very likely the jury went astray and considered the evidence as evidence of character and propensity. And the old chief case is very important here because what the Court says there is that there's no prior conviction that could be more prejudicial in a felon in possession case than a conviction dealing with another firearm. And what the Court says there was where a prior conviction was for a gun crime or one similar to the charges in a pending case, the risk of unfair prejudice would be especially obvious. Given that this was not an open-shut case for the government, given the pervasive quantity, the pervasive times that this prior conviction was talked about during the trial and emphasized by the prosecutor, given the district court's lack of helpful limiting instructions, I would ask this Court to reverse and remand Mr. Hankins' trial and remand it for a fair trial where Mr. Hankins can be determined guilty or innocent based on the facts of the occurrence charged in the indictment. Thank you. Okay. Thank you, counsel. Matter stands submitted.
judges: Leavy, Paez, Berzon